# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> DOES 1-62, <br><br> Defendants. | CASE NO. 11-cv-575-MMA (NLS) <br><br> **ORDER RE: MOTIONS TO QUASH SUBPOENA AND DISMISS; AND** <br><br> [Doc Nos. 12, 14, 16, 23] |

Currently before the Court are the motions of Doe Defendants 29, 48, and 5 to quash pursuant to Federal Rule of Civil Procedure 42(c)(3) and motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3). [Doc. Nos. 14, 16, 23.] Also before the Court is Doe No. 38's "Objection to Subpoena," which the Court construes as a motion to dismiss pursuant to Rule 12(b)(2). [Doc. No. 12.] For the reasons set forth below, the Court **DENIES** the motions to quash and the motions to dismiss **without prejudice**.

## BACKGROUND

On March 22, 2011, Plaintiff Liberty Media Holdings, LLC, filed this action against sixty-two Doe Defendants, alleging Defendants infringed on Plaintiff's copyright to the motion picture "Down on the Farm" (the "film") by allegedly reproducing and distributing the film using an internet peer-to-peer file sharing network known as BitTorrent. Plaintiff alleges that Doe Defendants are "a group of BitTorrent users or peers whose computers are collectively

interconnected for the sharing of a particular unique file, otherwise known as a 'swarm.'" [Compl., Doc No. 1, ¶ 13.] Plaintiff's complaint asserts claims of copyright infringement (17 U.S.C. § 501), contributory copyright infringement, conspiracy, and negligence.

The Complaint alleges: "The Court has personal jurisdiction over Defendants, as Defendants either reside in, solicit, transact, or are doing business within the Jurisdiction; they have committed to [sic] unlawful and tortious acts both within and outside the Jurisdiction with the full knowledge that their acts would cause injury in this Jurisdiction." [Compl. ¶ 6.] The Complaint also states that venue is proper: "Although the true identities of each and every member of the collective formed by the Defendants is unknown to the Plaintiff at this time, on information and belief, each Defendant may be found in this District and/or a substantial part of the infringing acts complained of herein occurred in this District, and Defendants can reasonably anticipate being haled into court in this District." [Compl. ¶ 9.]

Plaintiff identified IP addresses associated with each of the sixty-two Doe Defendants and moved this Court for permission to take early discovery to subpoena the identities of all Doe Defendants from their respective Internet Service Providers ("ISPs"). [Doc. No. 3.] On May 12, 2011, the Court granted Plaintiff's motion to take early discovery for the limited purpose of identifying the identities of the Doe Defendants. [Doc. No. 5.] However, the Court required the ISPs to notify subscribers of the opportunity to object to the Court's jurisdiction and/or move to quash the subpoenas prior to disclosure of the information sought. [*Id*.]

On June 23, 2011, Doe 38 objected to the subpoena because the Court lacks personal jurisdiction over him/her. [Doc. No. 13.] On June 23, 2011, Doe 29 filed a motion to quash the subpoena and a motion to dismiss for lack of personal jurisdiction and misjoinder. [Doc. No. 14.] On June 27, 2011, Doe 48 filed a motion to dismiss and motion to quash the subpoena for lack of personal jurisdiction, improper venue, and asserting affirmative defenses to the claims against her. [Doc. No. 16.] Doe 48 also moves, in the alternative, for transfer of venue to Virginia, her state of residence. On July 8, 2011, Doe 5 filed a motion to quash and motion to dismiss for lack of personal jurisdiction and improper venue. These four Doe Defendants (together, "Movants") are proceeding *pro se*. Pursuant to the Court's June 27, 2011 order [Doc. No. 17], Plaintiff filed a

1 consolidated response [Doc. No. 24] to these pending motions.  Plaintiff filed a supplemental
2 response [Doc. No. 27] to the fourth pending motion.  In addition, Plaintiff voluntarily dismissed
3 Does 25, 26, 27, 35, 40, 42, and 51 from the action.  [Doc. Nos. 6, 7, 9, 10, 18-20, 28, 29] and
4 entered into stipulated settlements with Does 8 and 37.  [Doc. Nos. 31, 35.]

## LEGAL STANDARD

6 Under Rule 45(c)(3), a court must modify or quash a subpoena that, *inter alia*, "requires
7 disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a
8 person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A).

9 Quashing subpoenas "goes against courts' general preference for a broad scope of
10 discovery, [but] limiting discovery is appropriate when the burden of providing the documents
11 outweighs the need for it."  *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332,
12 354-355 (D.D.C. 2011) (citing *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51
13 (D.D.C. 2005) (internal citations omitted).  "When evaluating whether the burden of subpoena
14 compliance is "undue," the court balances the burden imposed on the party subject to the subpoena
15 by the discovery request, the relevance of the information sought to the claims or defenses at issue,
16 the breadth of the discovery request, and the litigant's need for the information.  *Id*.  "Whether a
17 burdensome subpoena is reasonable must be determined according to the facts of the case, such as
18 the party's need for the documents and the nature and importance of the litigation."  *Id*. (quoting
19 *Linder v. DOD*, 133 F.3d 17, 24 (D.C. Cir. 1998) (internal quotations omitted).  The court must
20 limit discovery when the "burden or expense of the proposed discovery outweighs its likely
21 benefit, considering the needs of the case, the amount in controversy, the parties' resources, the
22 importance of the issues at stake in the action, and the importance of the discovery in resolving the
23 issues."  Fed. R. Civ. P. 26(b)(2)(C)(iii).
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## DISCUSSION

**1.      Motions to Quash or Dismiss Based on Lack of Personal Jurisdiction**

Movants argue the Court lacks personal jurisdiction over them because they do not reside in California, they are not engaged in any business in California, and they lack sufficient minimum contacts with the forum to be subject to jurisdiction in California. In response, Plaintiff argues that in a copyright infringement case, jurisdiction is proper where the copyright owner is located. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010); *Righthaven LLC v. South Coast Partners, Inc.*, 2011 U.S. Dist. LEXIS 12802 (D. Nev. Feb 5, 2011). Plaintiff also argues it is premature to evaluate any jurisdictional defenses at this time since Doe Defendants have not been formally named and served with the complaint. According to Plaintiff, Doe Defendants may not even be named as Defendants, as some of them claim their internet account was used by third-parties.

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." *Liberty Media Holdings, LLC v. Tabora*, 2012 U.S. Dist. LEXIS 1101, 4-7 (S.D. Cal. Jan. 4, 2012) (citing *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, allows courts to "exercise jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." *Id*. "This provision allows courts to exercise jurisdiction to the limits of the Due Process Clause of the U.S. Constitution." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005). Thus, the governing standard here is whether the exercise of personal jurisdiction comports with due process. *Id*.

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Here, Movants have not yet been identified and their connections, or lack there of, to California are unknown. In the absence of this information, it is premature to decide whether the

1  Court has personal jurisdiction over unnamed Doe Defendants. Neither the Court nor Plaintiff can
2  adequately determine if personal jurisdiction exists until Doe Defendants identify themselves or
3  are identified by their ISPs. *IO Group, Inc., v. Does 1-19*, 2010 U.S. Dist. LEXIS 133717 (N.D.
4  Cal. Dec. 7, 2010); See also *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332,
5  347 (D.D.C. 2011) ("[A]t this juncture when no putative defendant has been named, the Court has
6  limited information to assess whether any putative defendant has a viable defense of lack of
7  personal jurisdiction or to evaluate possible alternate bases to establish jurisdiction.").

8  Furthermore, Plaintiff has yet to formally name any Doe Defendants in the Complaint or
9  serve them with process. "Although movants generally assume that they will be named as
10 defendants once their contact information is turned over to Plaintiff by their ISP, the Court cannot
11 automatically draw that conclusion." *W. Coast Prods. v. Doe, 275 F.R.D. 9*, 14-15 (D.D.C. 2011).
12 If, as several Movants assert, their internet accounts were used by third parties to unlawfully
13 infringe Plaintiff's copyrighted film, then it is those third parties, rather than Movants themselves,
14 who should properly be named as defendants. *Id*. Until Plaintiff formally names and serves each
15 defendant, the Court cannot be certain whether Movants will be compelled to defend this action as
16 parties. *Id*. Therefore, it is premature to evaluate their jurisdictional defenses. Furthermore,
17 "[e]ven assuming that Movants will ultimately be named as defendants, they will have the
18 opportunity to assert their jurisdictional defenses once they are served with process, either in their
19 answers or in pre-answer motions to dismiss." *Id*; see also *London-Sire Records, Inc. v. Doe 1*,
20 542 F. Supp. 2d 153, 180-81 (D. Mass. 2008) (denying motion to quash for lack of personal
21 jurisdiction filed by Jane Doe defendant because jurisdictional discovery might establish a basis
22 for jurisdiction); *Sony Music Entm't,* 326 F. Supp. 2d at 567-68 (concluding that it would be
23 premature to determine that personal jurisdiction is lacking before the defendant had been
24 identified). Accordingly, the Court finds Movants' jurisdictional arguments premature and
25 declines to quash Plaintiff's subpoena or dismiss the action for lack of personal jurisdiction at this
26 stage in the litigation.
27 / / /
28 / / /

### 2.     **Motions to Quash or Dismiss Based on Misjoinder**

Second, some Doe Defendants move to quash, or in the alternative dismiss the action, on the ground that joinder is inappropriate. For example, Doe 29 challenges Plaintiff's allegation that over sixty defendants participated in the same infraction.

In opposition, Plaintiff argues joinder is proper and practical. According to Plaintiff, each of the 62 Does engaged in the same transaction or occurrence because they collectively distributed a specific infringing file, the A3E Hash, over BitTorrent. Plaintiff argues that,

> [U]nlike traditional peer-to-peer networks, which broker a 1-to-1 connection between and uploader and downloader, a BitTorrent "swarm" is a collective enterprise where each downloader is also an uploader, and where a group of uploaders collaborate to speed the completion of each download of the file. Thus, contrary to John Doe's assertion, the putative defendants do not engage in isolated acts of infringement, but rather collectively partake in mass infringement of not just the same work, but the same exact file, namely the A3E Hash.

[*Plaintiff's Consolidated Response*, Doc. No. 24, pp. 9-10.]

Under the Federal Rules of Civil Procedure, defendants may be joined in one action when claims arise from the same transaction or occurrence or series of transactions or occurrences, and any question of law or fact in the action is common to all defendants. Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) is designed to promote judicial economy and trial convenience. See *Mosley v. Gen. Motors*, 497 F.2d 1330, 1332-33 (8th Cir. 1974). The Supreme Court has found that "[u]nder the [Federal] Rules [of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) (superceded on other grounds).

The remedy for improper joinder is severance under Federal Rule of Civil Procedure 21. This rule does not set forth what constitutes misjoinder, but "it is well-settled that parties are misjoined when the preconditions of permissive joinder set forth in Rule 20(a) have not been satisfied." *Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004) (quoting *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 142 (N.D.N.Y. 1999)). However, Rule 21 provides "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed.

R. Civ. P. 21.

The Ninth Circuit has found that "even once [the Rule 20(a)] requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Company*, 232 F.3d 1271, 1296 (9th Cir. 2000) (citing *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir. 1980) (finding that the district court did not abuse its discretion when it severed certain plaintiff's claims without finding improper joinder)). Under Rule 20(b), the district court may sever claims or parties in order to avoid prejudice. Fed. R. Civ. P. 20(b). Courts have also exercised their discretion to sever where "[i]nstead of making the resolution of [the] case more efficient . . . joinder would instead confuse and complicate the issues for all parties involved." See, e.g., *Wynn v. National Broadcasting Company*, 234 F. Supp. 2d 1067, 1088 (C.D. Cal. 2002) (finding that even where Rule 20 requirements for joinder are satisfied, the Court may exercise its discretion "to sever for at least two reasons: (1) to prevent jury confusion and judicial inefficiency, and (2) to prevent unfair prejudice to the [defendants]") (citing *Coleman*, 232 F.3d at 1296).

The Ninth Circuit has yet to decide whether permissive joinder is appropriate in cases, such as this one, where Doe Defendants collectively downloaded and uploaded the same file using BitTorrent technology. Additionally, the Southern District of California has not taken up the issue and courts outside the Southern District are divided. Earlier cases found the use of the same peer-to-peer network ("P2P") by a group of doe defendants to commit copyright infringement insufficient to sustain permissive joinder. *See e.g. IO Group, Inc. v. Does 1-19*, 2010 U.S. Dist. LEXIS 133717, 2010 WL 5071605, at *3 (N.D. Cal. Dec. 7, 2010) (collecting cases). Generally, those cases found joinder inappropriate because the only connection between the doe defendants was the allegation that they used the same ISP and P2P network to conduct copyright infringement and there was no allegation the doe defendants acted in concert or conspired to infringe upon the copyrights. *Id*. (Citing *Laface Reocrds, LLC v. Does 1-38*, 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. Feb. 27, 2008)); *see also Interscope Records v. Does 1-25*, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004); *Twentieth Century Fox Film Corp. v. Does 1-12*, No. C 04-04862

(N.D. Cal. Nov. 16, 2004).

More recently, with the advent of BitTorrent technology, some courts have accepted the assertion that "[d]oe defendants who have participated in the same swarm to download a copyrighted work may properly be joined under Rule 20(a), notwithstanding the authority that reaches a contrary conclusion with respect to earlier P2P technologies." *Hard Drive Prods. v. Does 1-188*, 2011 U.S. Dist. LEXIS 94319 (N.D. Cal. Aug. 23, 2011) (citing *MCGIP, LLC. v. Does 1-18*, 2011 U.S. Dist. LEXIS 64188 (N.D. Cal. June 2, 2011); *Voltage Pictures, LLC v. DOES 1-5,000*, 2011 U.S. Dist. LEXIS 50787 (D.D.C. May 12, 2011); *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332 (D.D.C. Mar. 22, 2011) (collecting cases)).

For example, in *Call of the Wild Movie v. DOES 1-1,062,* the Circuit for the District of Columbia held that joinder is appropriate in BitTorrent copyright infringement cases, at least at this stage in the litigation. 770 F. Supp. 2d 332, 345 (D.D.C. Mar. 22, 2011). In *Call of the Wild*, after the court granted the plaintiffs' motion for expedited discovery to obtain identifying information about the doe defendants, the ISPs moved to quash or modify the subpoena, arguing, *inter alia*, joinder was improper. *Id.* at 341. The ISPs argued that 'engaging in separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement' does not satisfy Rule 20(a)(2)(A)'s requirement that the claim asserted against the joined defendants arise out of the same transaction, occurrence, or series of transactions or occurrences.'" *Id*. at 342-43.  However, in support of joinder, the plaintiff argued that defendants were "logically related" because

> [T]he BitTorrent file-sharing protocol 'makes every downloader also an uploader of the illegally transferred file(s)'. . . [and] that the 'nature of a BitTorrent protocol [is that] any seed peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file'

*Call of the Wild*, 770 F. Supp. 2d at 343 (quoting complaint).

The court in *Call of the Wild* agreed with the plaintiff, finding that Rule 20(a)(2)(A) "essentially requires claims asserted against joined parties to be 'logically related' . . . [and that] [t]his is a flexible test and courts seek the 'broadest possible scope of action.'" *Id*. at 342 (citations omitted). The court also found the plaintiffs met the requirement that the claims against

the putative defendants contain a common question of law or fact, and that joinder would not prejudice the parties or result in needless delay. *Id*. at 343-46. While the court recognized that "each putative defendant may later present different factual and substantive legal defenses," it nevertheless found the commonality of facts and legal claims were sufficient to support joinder under Rule 20(a)(2)(B) at this stage of the proceedings. *Id*. at 344.

Several recent cases out of the Northern District of California, however, depart from the holding in *Call of the Wild*, holding that joinder is not appropriate because "the use of BitTorrent technology, like earlier P2P technologies, does not satisfy the requirements for permissive joinder." *Hard Drive Prods. v. Does 1-188*, 2011 U.S. Dist. LEXIS 94319, 27-29 (N.D. Cal. Aug. 23, 2011); *Diabolic Video Productions, Inc. v. Does 1-2,2099*, 2011 U.S. Dist. LEXIS 58351 (N.D. Cal. May 31, 2011); *Pacific Century Int'l Ltd. v. Does 1-101*, 2011 U.S. Dist. LEXIS 73837 (N.D. Cal. July 8, 2011); *Millennium TGA, Inc. v. Does 1-21*, 2011 U.S. Dist. LEXIS 53465 (N.D. Cal. May 12, 2011).

In *Hard Drive Prods.* for example, the court found that joinder was not appropriate because the doe defendants "did not participate in the same transaction or occurrence, or the same series of transactions or occurrences," and the court was not persuaded that the doe defendants "acted in concert." *Id*. at 38-40. In coming to this conclusion, the court stated:

> Under the BitTorrent Protocol, it is not necessary that each of the Does 1-188 participated in or contributed to the downloading of each other's copies of the work at issue - or even participated in or contributed to the downloading by any of the Does 1-188. Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm. The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world.

*Id*. at 39-40.

Cases involving BitTorrent technology raise a new and distinct method of alleged copyright infringement that was not possible with the earlier P2P technology, mainly that BitTorrent users collectively share the same exact file by each contributing a small piece of the file to the user downloading the file. Furthermore, unlike the earlier P2P technology, the BitTorrent file-sharing protocol makes every downloader also an uploader of the illegally transferred file.

1  This distinguishes BitTorrent cases from the earlier P2P cases. Given this unique theory of
2  copyright infringement, it is possible that BitTorrent users identified with the alleged illegal
3  sharing of the same file are "logically related" and are "acting in concert."
4  Here, based on Plaintiff's allegations, it appears that Doe Defendants are logically related
5  and, at least at this procedural juncture, Plaintiff sufficiently alleged that its claims against them
6  potentially stem from the same transaction or occurrence. Here, unlike *Hard Drive Prods.*, where
7  it was unclear whether all one hundred and eighty eight doe defendants were part of the same
8  "swarm," Plaintiff alleges all Defendants participated in the same "swarm" and all of the IP
9  addresses identified downloaded and shared the same unique "hash" (a file identifier) [Compl, ¶
10 3.] This allegation supports Plaintiff's claim that Doe Defendants "collectively" infringed on
11 Plaintiff's copyright.
12 Furthermore, judicial economy will be best preserved by joining Doe Defendants in a
13 single action rather than maintaining over fifty separate actions. "[J]oinder in a single case of the
14 putative defendants who allegedly infringed the same copyrighted material promotes judicial
15 efficiency, and in fact, is beneficial to the putative defendants." *Call of the Wild*, 770 F. Supp. 2d
16 at 344. Furthermore, Plaintiffs would be prejudiced by severance at this stage because they would
17 face significant obstacles in their efforts to protect their copyrights from illegal file-sharers. *Id*.
18 Nevertheless, joinder may prove inappropriate at a later stage in the litigation. If joinder becomes
19 impractical or will cause unnecessary delay resolving the case, the Court will reconsider whether
20 joinder is still appropriate.

21 **3.      Motions to Dismiss Based on Improper Venue**

22 Doe 48 and Doe 5 also move to dismiss based on improper venue pursuant to Federal Rule
23 of Civil Procedure 12(b)(3). Doe 48 claims to be a resident of Virginia and argues that California
24 is not the proper venue for this action. In the alternative, Doe 48 requests the Court transfer the
25 action to a proper venue pursuant to 28 U.S.C. § 1406(a). Plaintiff responds that it is premature to
26 decide jurisdictional and venue concerns because no putative defendant has been named and the
27 Court has limited information to assess the appropriateness of the venue.
28 "For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "This provision gives a district court broad discretion to transfer a case to another district where venue is also proper." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1108 (C.D. Cal. 2007). Venue in a copyright action is proper "in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Liberty Media Holdings, LLC v. Tabora*, 2012 U.S. Dist. LEXIS 1101, 23-24 (S.D. Cal. Jan. 4, 2012) (quoting *Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1994) (citing 28 U.S.C. 1400(a)).

Movants' assertion of improper venue and/or inconvenient forum may have merit but are premature at this procedural juncture. As discussed above, the identities and location of Doe Defendants is still unknown. Furthermore, without information regarding Doe Defendants' connections, or lack thereof, to California, the Court is not in a position to determine whether the Southern District of California is an appropriate venue. Accordingly, the Court declines to dismiss the action for improper venue or transfer the action to a more appropriate venue at this time.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Doe Defendants' motions to quash and motions to dismiss for lack of personal jurisdiction, misjoinder, and/or improper venue **without prejudice**. Because the Court does not have contact information to notify Doe 29 that his or her motion has been denied, the Court **ORDERS** Plaintiff to provide a copy of this Order to Doe 29's ISP, with the instruction that the ISP should provide a copy of this Order to Doe 29.

DATED: February 24, 2012

Hon. Michael M. Anello
United States District Judge